ZACHARY LEVINE (SBN 265901)
zjl@wolklevine.com
SARAH R. WOLK (SBN 251461)
srw@wolklevine.com
WOLK & LEVINE, LLP
535 N. Brand Blvd., Ste. 300
Glendale, CA 91203
Telephone: 818-241-7499
Facsimile: 323-892-2324

Attorneys for Plaintiff
Mehrbod Khademy Raad

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

MEHRBOD KHADEMY RAAD, an
individual;

        Plaintiff,

    vs.

MAXIMILLIAN STUDIOS LLC, a
California limited liability company;
CLARENCE MAXIMILLIAN NG, an
individual; and DOES 1-10;

        Defendants.

**COMPLAINT FOR:**

  (1) Accounting;
  (2) Breach of Oral Contract;
  (3) Money Had and Received; and
  (4) Declaratory Relief

**DAMAGES IN EXCESS OF $75,000**
**DEMAND FOR JURY TRIAL**

    Plaintiff Mehrbod Khademy Raad ("Plaintiff"), by and through his
undersigned counsel, files the following Complaint for an accounting of copyright
profits, declaratory relief, and demand for jury trial; complaining of Maximillian
Studios, LLC, Clarence Maximillian NG, and Does 1 through 10 (individually a
"Defendant" and collectively the "Defendants") as follows:

///

///

COMPLAINT - 1

**JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction because this action arises under the U.S. Copyright Act, 17 USC §101 *et. seq* (the "Act") and seeks remedies expressly granted by the Act. This Court also has original subject matter jurisdiction under 28 U.S.C. §1331 (federal question); 28 U.S.C. §1338(a) (any Act of Congress relating to copyright or trademarks); and 28 U.S.C. § 1367 (supplemental jurisdiction).

2.      This Court has personal jurisdiction over the Defendants in that Defendants conduct business in the State of California and in this District and have availed themselves of the benefits and protections of the same. All Defendants named herein have transacted business within California and contracted to supply goods or services in California in connection with the matters giving rise to the present suit.

3.      Venue is proper in this district under 28 U.S.C. §1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and a substantial part of the property that is the subject of the action is situated in this district.

**PARTIES**

4.      Plaintiff Mehrbod Khademy Raad is, and at all times relevant hereto was, an individual residing in Toronto, Canada.

5.      On information and belief, Defendant Maximillian Studios LLC is, and at all times relevant hereto was, a limited liability company organized under the laws of California, with its principal place of business in Los Angeles County, California.

6.      On information and belief, Defendant Clarence Maximillian Ng is, and at all times relevant hereto was, an individual residing in Los Angeles County, California

COMPLAINT - 2

7.    Does 1-10, are, and at all times relevant hereto were, by the nature of their conduct, liable to the Plaintiff for the misconduct alleged herein. At such time as the true names and identities of the Doe Defendants are known, Plaintiff will seek leave of this Court to amend the complaint to add the same.

## FACTS COMMON TO ALL CAUSES OF ACTION

8.    Five lead developers came together to jointly create a videogame now called "Frontlines", which is published on the Roblox platform and referred to as an "experience" (the "Experience"). Those lead developers were Sid Nadkarni, Ben Ruddy, Nicolas Rubi, Plaintiff Mehrbod Khademy Raad, and Defendant Clarence Maximillian Ng. These individuals agreed to the following initial split of equity in the Experience: Defendant Clarence Maximillian Ng = 33%, Nicolas Rubi = 33%, Sid Nadkarni = 11%, Ben Ruddy = 11%, and Plaintiff Mehrbod Khademy Raad = 11%. The parties agreed to split revenue derived from the Experience in accordance with their percentage ownership with the remaining 1% ownership/revenue allocated to fund the project and future development. In the event that the parties elected to distribute the remaining 1%, or a portion thereof, they agreed that it would be split pro rate according to their respective ownership interest as a whole. Robux can be readily exchanged for USD.

9.    Roblox allows creators of content, such as the Experience, to monetize that content on its platform and collect the platform's digital currency ("Robux") for the same. The individual developers listed above organized their team as a "Group" under the Roblox Terms of Service and "published" the Experience in the name of that Group. Each Group is required to designate a single "Owner" of the content being published and it is the Owner's responsibility to represent the other members of the Group and to distribute revenue appropriately. Defendant Clarence Maximillian Ng's was the designated Owner of the Group publishing the Experience. As revenue came in, it was set to automatically

distribute to each individual according to their equity ownership in the Experience referenced above. On information and belief, Roblox maintains Group Audit Logs that memorialize and document these distributions.

10.    In the spring of 2022, the Experience was admitted to Roblox's "Game Fund" program whereby Roblox would provide a recoupable advance to fund additional development of the Experience. In order to permit Roblox to recoup its advance, the Group publishing the Experience would be required to turn off the automatic distribution of revenue in favor of a manual distribution system. In addition, Defendant Clarence Maximillian Ng formed Defendant Maximillian Studios LLC to act as the Group's Owner going forward and to execute the Game Fund Development Agreement. The other developers in the Group authorized the Defendants to take these actions, to accept the advance, and to use the same for future development and/or distribution.

11.    Rather than distributing the advance according to the equity ownership of each member of the Group, the parties decided to make a budget for the use of the money. After certain enumerated expenses, they agreed to pay salaries with the remaining funds to each member. These payments were just from the advance and did not replace the equity percentages of any member. Defendants instructed the other members of the Group to "invoice" Defendant Maximillian Studios LLC for these funds as work done as a contractor. Although invoices were submitted, they were not for ongoing work and the individuals were not contractors. Whether due to a misunderstanding of generally accepted accounting principles and law, or in an effort to create a false record, Defendants required these invoices in order to make distributions and the other members of the Group complied.

12.    Automatic distributions were not disabled until April 2023 so as revenue continued to come in to the Group, it had to reconcile the amounts that

were due to Roblox for recouping its advance that had been taken from Defendants' account.

13.    Manual distributions were made for a few months and in August of 2023, the members of the Group renegotiated their equity percentages. From that point forward, their percentages were as follows: Defendant Clarence Maximillian Ng = 29%, Nicolas Rubi = 29%, Sid Nadkarni = 14%, Ben Ruddy = 14%, and Plaintiff Mehrbod Khademy Raad = 14%. This redistribution also removed the previously reserved 1% for development costs and/or further distribution. On September 27, 2023, Defendant Clarence Maximillian Ng confirmed a payout according to the new equity percentages but that was the last payment ever made.

14.    The renegotiated equity percentages described above were part of a larger conversation initiated by Nicolas Rubi regarding a more formal agreement between the parties concerning the Experience. For these discussions, Defendant Clarence Maximillian Ng brought in Al Cuenca who Defendant appointed as CEO of Defendant Maximillian Studios LLC without any discussion or agreement among the other individuals of the Group. After consulting with Defendant Clarence Maximillian Ng, Al Cuenca prepared two (2) spreadsheets documenting previous distributions of revenue from the Experience that he shared with the Group. These spreadsheets correctly label the distributions as "Owner's Draw" as each individual who received a distribution was in fact an owner of the Experience.

15.    Negotiations for more formal agreements concerning the Experience were stalled when Defendant Clarence Maximillian Ng started working on other projects. Plaintiff and Nicolas Rubi also started to notice tens of thousands of dollars' worth of unauthorized transactions from the Group's account that were unrelated to the Experience. Demands were made for an explanation and reimbursement for unauthorized expenses but Defendants have refused.

16.    Unless enjoined by this Court, the Defendants will continue to withhold the distribution of revenue derived from the Experience that rightfully belongs to the individual owners and developers that created it.

**FIRST CLAIM FOR RELIEF**

**(Copyright Accounting)**

As and for a first cause of action against Defendants and each of them, Plaintiff alleges as follows:

17.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 16 inclusive, with the same force and effect as though set forth in full hereat.

18.    Co-owners of a work, such as the Experience, must account to other co-owners for any profits earned from the use of the work. This duty comes from equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners.

19.    Defendants have been, and currently are, collecting revenue derived from the exploitation of the Experience, which is co-owned by Sid Nadkarni, Ben Ruddy, Nicolas Rubi, Plaintiff Mehrbod Khademy Raad, and Defendant Clarence Maximillian Ng.

20.    Plaintiff demands an accounting of the revenue received by Defendants and distribution of the same according to the equity percentages of each individual owner listed above.

///

///

///

///

///

///

## SECOND CLAIM FOR RELIEF

### (Breach of Oral Contract)

As and for a second cause of action against Defendants and each of them, Plaintiff alleges as follows:

21.   Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 16 inclusive, with the same force and effect as though set forth in full hereat.

22.   Plaintiff and Defendants entered into an agreement to divide equity in the Experience among five (5) individuals and to distribute revenue generated according to those percentages.

23.   Plaintiff has performed all of his obligations under the agreement.

24.   Defendants have breached their obligations by failing to properly account for the distribution of revenue and by using revenue generated from the Experience for their own benefit.

25.   Plaintiff has been damaged as a direct result of Defendants' breaches in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### (Money Had and Received)

As and for a third cause of action against Defendants and each of them, Plaintiff alleges as follows:

26.   Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 16 inclusive, with the same force and effect as though set forth in full hereat.

27.   Defendants received money that was intended to be used for the benefit of third parties, including the Plaintiff.

28.    The money collected by Defendants was not used for the benefit of the Plaintiff and, following demand; Defendants have not given the money to the Plaintiff.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief)

As and for a fourth cause of action against Defendants and each of them, Plaintiff alleges as follows:

29.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 16 inclusive, with the same force and effect as though set forth hereat.

30.    A real and actual controversy exists between the parties as to the ownership of the Experience and the rights of the individuals who created and developed the same.

31.    Plaintiff seeks a determination from this Court that he is a co-owner of the Experience.

32.    There were other developers involved in the creation of the Experience that did not receive any equity ownership in the same or any right to receive a distribution of revenue. These contributors assigned their rights in their work and were paid for the same.

33.    The Experience is composed of a variety of audio and visual elements along with an extensive code base. Each individual owner of the Experience exercised substantial control over their work and contributions and no one contributor exercised complete control over the process of creation or development.

34.    The procedural animations and movement mechanics were produced by Nicolas Rubi and Defendant Ng; the recoil animation and gameplay balancing were developed by Nicolas Rubi, Defendant Ng, and Sid Nadkarni; the FPV keyframe animations were produced individually by animator contributors; the

music and sound effects were produced by Sid Nadkarni with supplemental references and feedback from the rest of the team; the environments were produced by Ben Ruddy; the weapon models were produced by various contributors; the user interface was produced by Nicolas Rubi, Defendant Ng, and a contributor. Plaintiff served as the Lead for all guns and weapons as well as the character pipeline. Plaintiff managed other gun artists, including setting the technical and artistic standards and quality checking their work. Plaintiff also created environmental props, character work, and the majority of the promotional materials and renders. Plaintiff handled all of the retopology where it was used, such as on the character or the photoscanned props. A large portion of Plaintiff's work was also scrapped due to gross mismanagement, such as the various iterations of skins he made that were never implemented, a fully game-ready helicopter, and various other assets.

35.    Neither Defendant exercised any technical control over the creation or development of the Experience, which was handled primarily by Nicolas Rubi, Sid Nadkarni, and Plaintiff Mehrbod Khademy Raad. All of the code architecture was designed by Nicolas Rubi without any input or assistance from anyone else. Plaintiff, as the lead 3D artist, imposed requirements on 3D modeling workflow, model topology, and UV's.

36.    Sid Nadkarni designed systems that improved the audio experience and implemented those systems, including one for environmental audio, one for detailed firearm sound effects, one for muffling sounds from behind barriers, and one for accentuating score feedback sounds.

37.    Throughout the development process, Defendant Ng acknowledged the autonomy of the individuals working in their area of expertise.

38.    A real and actual controversy exists between the parties as to the ownership and use of the work that Plaintiff created that was incorporated into the Experience. Defendants contend that this work was irrevocably licensed to Defendant Maximillian Studios LLC and Plaintiff seeks a determination from this

1    Court that no such license was created, or, in the alternative, that any existing

2    license is not irrevocable.

3

4                              **PRAYER FOR RELIEF**

5        WHEREFORE, Plaintiff prays for judgment as follows:

6        1.    Judgment in Plaintiff's favor and against Defendants on all causes of

7    action alleged herein;

8        2.    Actual damages suffered by Plaintiff as a result of Defendants'

9    unlawful conduct, in an amount to be proven at trial, as well as prejudgment

10   interest as authorized by law, but in no event less than the statutory minimum of

11   this Court;

12       3.    Restitutionary relief against Defendants and in favor of Plaintiff,

13   including disgorgement of wrongfully obtained profits and any other appropriate

14   relief; and

15       4.    An Order from the Court regarding the ownership interests of the

16   creators and co-owners of the Experience;

17       5.    An Order from the Court declaring that Plaintiff did not license his

18   code in the Experience to the Defendants or that if such a license exists that it was

19   not irrevocable.

20       6.    Any other remedies to which Plaintiff may be entitled.

21

22

23   DATED: January 22, 2026                    WOLK & LEVINE, LLP

24

25                                               _/s/ Zachary Levine_____

26                                               By: Zachary Levine, Esq.
                                                 Attorneys for Plaintiff Mehrbod
27                                               Khademy Raad

28

                              COMPLAINT - 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR A JURY TRIAL

Pursuant to F.R.C.P. Rule 38 and Local Rule 38-1, Plaintiff requests a trial by jury.

DATED: January 22, 2026                    WOLK & LEVINE, LLP


                                           _/s/ Zachary Levine_____

                                           By: Zachary Levine, Esq.
                                           Attorneys for Plaintiff Mehrbod
                                           Khademy Raad